IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KELLY E. TESTER KOPEC,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:23-cv-680<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Kelly Tester Kopec filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. Doc. 9. Following review, and for the reasons stated below, I vacate and remand the Commissioner's decision.

**Procedural history**

In July 2020, Kopec filed an application for Supplemental Security Income alleging a disability onset date of July 23, 2020,[1] and claiming she was

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

disabled due to hearing loss in both ears, cholesteatoma[2] inside her left ear, progressive arthritis, thyroid removal, ovarian cysts removal, and left arm issues. Tr. 15, 177, 195. The Social Security Administration denied Kopec's application and her motion for reconsideration. Tr. 75, 82. Kopec then requested a hearing before an Administrative Law Judge (ALJ). Tr. 108.

In January 2022, an ALJ held a hearing. Kopec and a vocational expert testified. Tr. 28–68. The next month, the ALJ issued a written decision finding that Kopec was not disabled. Tr. 15–23. The ALJ's decision became final on February 27, 2022, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Kopec filed this action on March 31, 2023. Doc. 1. She asserts the following assignment of error:

> The ALJ failed to adequately evaluate and sufficiently explain his analyses of the physical restrictions assessed by James Bircher, D.O., who performed a consultative examination for the agency. The decision violates agency regulations, and the RFC finding in this case is not supported by substantial evidence.

Doc. 8, at 3.

---

[2] A cholesteatoma is a cyst-like mass or benign tumor that is generally found in the middle ear. *See* Dorland's Illustrated Medical Dictionary 354 (33rd ed. 2020).

**Evidence**

*Personal and vocational evidence*

Kopec was born in 1977 and was 42 years old on the date she filed her disability application. Tr. 22. She completed eleventh grade and has no past relevant work. Tr. 22, 196.

*Medical evidence*[3]

In August 2020, Kopec went to a doctor complaining of joint pain and swelling. Tr. 480. Previous testing was negative for rheumatoid factor and antinuclear antibodies. Tr. 480. Kopec's extremity exam findings showed normal strength and range of motion. Tr. 481.

In July 2021, Kopec saw James Bircher, D.O., at the agency's request for a consultative exam. Tr. 798. Dr. Bircher listed Kopec's allegations of disability, including hearing loss in both ears, left shoulder pain, and low back pain. Tr. 798. He stated that Kopec "seem[ed] to be a reliable historian." Tr. 798. Kopec reported that she could sit and stand for "not long," walk one block, and lift ten pounds. Tr. 799. On exam, Kopec had difficulty hearing and Dr. Bircher had to raise his voice. Tr. 801. Kopec had good hand-eye coordination and normal sensation and reflexes. Tr. 801. She had an unsteady gait and "required" a cane. Tr. 801. Kopec had no joint swelling or tenderness. Tr. 801. She could lift, carry, and handle objects with her right hand, but showed

---

[3] The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

3

"limited" left arm function due to left shoulder pain and weakness. Tr. 801. Dr. Bircher commented that Kopec could "rise from a sitting position with cane and had mild difficulty getting up and down from the exam table." Tr. 801. Due to her left shoulder issues, Kopec needed help taking off or putting on her sweater. Tr. 801–02.

Dr. Bircher opined that Kopec could sit, stand, and walk and that she required a cane. Tr. 802, 805. He explained that Kopec had normal strength and range of motion other than "severely limited left shoulder motion and strength as documented." Tr. 802, 804. Dr. Bircher found that Kopec "will have difficulty" walking for more than an hour, standing for an hour, and lifting twenty pounds. Tr. 802. Kopec "should be able to sit for an hour." Tr. 802. Dr. Bircher reiterated that Kopec had diminished hearing "requiring louder volumes for conversation." Tr. 802.

A few days later, Kopec went to her doctor's office for joint pain and swelling. Tr. 852. Kopec reported "long-standing" hand and foot pain that made it difficult to hold a car steering wheel. Tr. 852. She said that it was hard to walk and she frequently needed to sit. Tr. 852. Kopec's exam findings showed full range of motion and normal strength in her extremities. Tr. 853. X-rays of Kopec's ankles and hands were unremarkable. Tr. 692, 853.

A week later, Kopec went to an orthopedic clinic for an evaluation of ankle pain. Tr. 811. She was using a cane "for mobilization." Tr. 811. On exam, Kopec had tenderness to palpation of her right ankle and no edema or effusion,

4

a normal range of motion, and intact sensation. Tr. 813. The doctor advised Kopec to continue a home exercise program. Tr. 814.

In October 2021, Kopec saw her primary care physician for joint pain and swelling. Tr. 833. Kopec said that steroids and Meloxicam were ineffective and that Celebrex worked best. Tr. 833. On exam, Kopec had a full range of motion and normal strength in her extremities. Tr. 834.

*State agency opinions*[4]

In September 2020, Dimitri Teague, M.D., reviewed Kopec's record and assessed Kopec's residual functional capacity (RFC).[5] Tr. 78–79. Dr. Teague opined that Kopec could perform light work—occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Tr. 78–79. Dr. Teague found that Kopec could frequently climb ladders, ropes,

---

[4] When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[5] An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

and scaffolds and frequently stoop, kneel, crouch and crawl. Tr. 79. He also found that Kopec was limited to "frequent hearing." Tr. 79.

In September 2021, Leslie Green, M.D., reviewed Kopec's record, including Dr. Bircher's report. Tr. 83–88. Dr. Green affirmed Dr. Teague's findings and added environmental restrictions based on Kopec's hearing loss. Tr. 88–89.

*Hearing testimony*

Kopec, who was represented by counsel, testified at the telephonic administrative hearing held in January 2022. Kopec confirmed that she had left ear surgery a year before the hearing to remove a cholesteatoma. Tr. 41. Her condition hadn't improved—if anything, it had worsened. Tr. 42. Her surgeon, now retired, told Kopec that she had eustachian tube collapse. Tr. 42. Kopec stated that she "just can't hear very well at all." Tr. 43. She gets dizzy and has balance problems. Tr. 43. When she sits or stands up, she has to "go real slow." Tr. 44. Kopec hadn't fallen, but she was "wobbly." Tr. 44–45.

Kopec stated that she gets headaches, which could occur every other day. Tr. 45–46. She takes medication, which prevents severe migraines. Tr. 47. Kopec's headaches also cause light and sound sensitivity and nausea. Tr. 47–48. Kopec takes medication for her nausea, which is also caused by her dizziness. Tr. 48.

Kopec said that she has arthritis in her hands, ankles, lower back, and hips. Tr. 49. She has difficulty gripping and holding things. Tr. 49. She has a

6

50 percent rotator cuff tear in her left shoulder. Tr. 50. She has no strength in her left arm and can't reach overhead, in front, or to the side. Tr. 50–51. Kopec said that she uses a cane, which was not prescribed, for arthritis and dizzy spells. Tr. 51–52. She stated that her ankles swell and she props her legs up. Tr. 52.

Kopec said that she also has ankle pain and didn't think she could walk a block. Tr. 52. She estimated that she could stand for a couple of minutes. Tr. 53. Kopec can sit for as long as necessary. Tr. 53. She can lift a couple of pounds using her right arm. Tr. 53. Kopec takes medication, which helps. Tr. 54. She also has lower back pain. Tr. 55.

The ALJ stated that Kopec had no past relevant work. Tr. 63. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work history as Kopec could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 63–65. The vocational expert answered that such an individual could perform the following jobs: document preparer, call-out operator, and telephone quotation clerk. Tr. 65.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since July 23, 2020, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant had the following severe impairments: unspecified osteoarthritis, irritable

7

bowel syndrome, left shoulder rotator cuff tear and impingement syndrome, and conductive hearing loss (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can reach over overhead occasionally. She can frequently handle and finger. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can have no exposure to unprotected heights, hazardous machinery, or commercial driving. She is limited to work performed in a moderate noise environment, consistent with an office setting.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born [in] … 1977 and was 42 years old, which is defined as a younger individual age 18–44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

8

>    10. The claimant has not been under a disability, as defined in the Social Security Act, since July 23, 2020, the date the application was filed (20 CFR 416.920(g)).

Tr. 17–23.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

>    1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
>    2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
>    3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
>    4. What is the claimant's residual functional capacity and can the claimant perform past

9

>   relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.
>
> 5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial

evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

Kopec argues that the ALJ failed to comply with applicable regulations when he evaluated Dr. Bircher's opinion. Doc. 8, at 8. In this regard, the Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

The ALJ evaluated Dr. Bircher's opinion as follows:

> The claimant had a medical consultative exam with James Bircher, D.O., in which the claimant said she could sit and stand for only short periods, walk one block, and lift ten pounds (12F/2). She displayed normal abdomen and neurological functioning (12F/3). She was unsteady and required a cane but she had good hand eye coordination (12F/4). She displayed limited left arm function due to left

12

>shoulder pain and weakness although she had no joint swelling or tenderness (12F/4). She required higher volumes for conversation (12F/5).
>
>Dr. Bircher opined that the claimant would have difficulty walking over one hour, standing for sixty minutes, and lifting twenty pounds (12F/5). Dr. Bircher noted that the claimant could sit for an hour (12F/5). The undersigned finds Dr. Bircher's opinion persuasive in general because the record confirmed that the claimant's shoulder, arthritis, and hearing conditions limited her to sedentary work, which appeared somewhat consistent with Dr. Bircher's opinion. However, the treatment notes did not establish the need for a cane or that she could walk, stand, or sit for only one hour. Indeed, the treatment notes failed to document such substantial problems with being on her feet or sitting. Likewise, the treatment notes did not document the ongoing need for a cane or any ambulatory aid. Rather, there was only one treatment note indicating such usage and a cane was not prescribed.

Tr. 21.

Kopec argues that the ALJ only discussed the consistency factor and not the supportability factor. Doc. 8, at 9. The Commissioner says that "[b]y discussing the findings from Dr. Bircher's examination and explaining why some limitations were consistent with the record, while others were not, the ALJ articulated his consideration of the supportability of Dr. Bircher's opinion." Doc. 12, at 9. And so, the Commissioner concludes, the ALJ complied with the regulations. *Id.*

But the supportability and consistency factors are different. *Compare* 20 C.F.R. § 416.920c(c)(1) (*supportability* is objective medical evidence and supporting explanations a doctor uses to support his or her own opinion), *with*

13

20 C.F.R. § 416.920c(c)(2) (*consistency* means whether a medical opinion is consistent with other evidence in the record). So the ALJ's explanation about the inconsistency of Dr. Bircher's opinion with other evidence in the record doesn't fulfill the ALJ's obligation to explain the supportability factor. *See* 20 C.F.R. § 404.1520c(b)(2) (the Agency "*will explain* how we considered the supportability *and* consistency factors for a medical source's medical opinion") (emphasis added); *Brown v. Comm'r of Soc. Sec.*, No. 1:21-cv-1042, 2022 WL 2611297, at *10 (N.D. Ohio May 16, 2022) (finding that the ALJ erred by only discussed the supportability factor and not the consistency factor), *report and recommendation adopted*, 2022 WL 2833810 (N.D. Ohio July 20, 2022). And while the ALJ recited Dr. Bircher's exam findings when describing Dr. Bircher's opinion, Tr. 21, the ALJ didn't explain how or whether he factored those exam findings into his evaluation of Dr. Bircher's opinion.

The Commissioner reiterates that "an ALJ need not specifically use the terms 'supportability' or 'consistency' in his analysis." Doc. 12, at 9–10. That's true.[6] But here, the issue isn't whether the ALJ used the magic words

---

[6] *See, e.g., Owens v. Comm'r of Soc. Sec.*, No. 3:20-cv-1737, 2021 WL 8342841, at *6 (N.D. Ohio Sept. 15, 2021) (rejecting the plaintiff's argument that the ALJ failed to discuss the supportability factor because the ALJ, while not using the word *supported*, stated that the doctor's opinion relied heavily on the claimant's subjective reports of symptoms, which is relevant to the supportability factor), *report and recommendation adopted*, 2023 WL 6283030 (N.D. Ohio Sept. 27, 2023); *Cormany*, 2022 WL 4115232, at *5–6 (the ALJ complied with the regulations when explaining that the doctor's opinion was contrary to the doctor's own treatment notes and inconsistent with the claimant's testimony, even though the ALJ didn't use the words *supportability* and *consistency*); *Marlowe v. Comm'r of Soc. Sec.*, No. 1:22-cv-1020, 2023 WL

*supportability* and *consistency*. Rather, the issue is whether in essence the ALJ complied with the regulations by explaining these factors when he evaluated Dr. Bircher's opinion. And the ALJ only explained the consistency factor when he found that treatment notes in the record were inconsistent with Dr. Bircher's opinion. Tr. 21. The ALJ didn't explain the supportability factor—whether and to what extent Dr. Bircher's opinion was supported by Dr. Bircher's own evaluation of Kopec. So this is not a case in which the ALJ complied with the spirit, if not the letter, of the regulations.

Kopec argues that this error isn't harmless because "Dr. Bircher's restrictions would limit [Kopec] to such a reduced range of sedentary work that—arguably—all jobs would be eliminated." Doc. 8, at 12. Notably, the Commissioner presents no counter argument.[7] In any event, an ALJ's error evaluating opinion evidence may be harmless in one of three circumstances: (1) the opinion was "so patently deficient that the Commissioner could not possibly credit it"; (2) the ALJ's RFC findings were consistent with the opinion; or (3) the ALJ "otherwise met the goals of the regulations by indirectly

---

2541436, at *10 & n.14 (N.D. Ohio Feb. 21, 2023) ("The ALJ discussed the most important factors—supportability and consistency—when he found that Dr. Srivastava's opinion wasn't supported by Dr. Srivastava's own treatment notes and was inconsistent with other treatment notes in the record," even though the ALJ didn't use the word *consistent*), *report and recommendation adopted*, 2023 WL 2538901 (N.D. Ohio Mar. 16, 2023).

[7]    The Commissioner only argues that a different alleged error—one related to the ALJ's evaluation of state agency reviewer Dr. Green—was harmless. Doc. 12, at 12.

attacking the supportability or consistency of the opinion." *Bates v. Comm'r of Soc. Sec.*, No. 3:21-cv-1055, 2022 WL 2610519, at *8 (N.D. Ohio May 27, 2022) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) and *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010)), *report and recommendation adopted*, 2022 WL 2916871 (N.D. Ohio July 25, 2022).[8] The first two circumstances don't apply here. As for the third, I am hard-pressed to find where in the decision the ALJ indirectly assessed the supportability of Dr. Bircher's opinion, without inventing reasoning for the agency. But that would be improper. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court … must judge the propriety of such [decisions] solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.").

Simply put, the ALJ didn't comply with the regulations, which is grounds for reversal. *See Jordan*, 548 F.3d at 422; *Brown*, 2022 WL 2611297, at *11.

---

[8] *Bates* explains that the harmless error analysis described by the Sixth Circuit applied to the pre-March 27, 2017 regulations for treating source opinions, but that district courts within this Circuit have applied the analysis to the post-March 27, 2017 regulations covering opinion evidence. 2022 WL 2610519, at *8 (citing *Hickman v. Comm'r of Soc. Sec.*, No. 2:20-cv-6030, 2021 WL 5176523, at *5 n.4 (S.D. Ohio Nov. 8, 2021), *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 WL 3056108, at *11 n.8 (W.D. Tenn. July 20, 2021), and *Burba v. Comm'r of Soc. Sec.*, No. 1:19-cv-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020)).

Because I find that the ALJ erred when evaluating Dr. Bircher's opinion, there is no need to address Kopec's other argument—that Dr. Green's opinion was internally inconsistent such that the ALJ's partial reliance on Dr. Green's opinion was faulty. Doc. 8, at 9–10. It's not clear that Dr. Green's opinion was internally inconsistent. And even if it was, it's unclear how that alleged internal inconsistency would amount to error or, if error, how that error was harmful. Nevertheless, on remand, the ALJ will have an opportunity to reevaluate Dr. Green's and Dr. Bircher's opinions.

**Conclusion**

For the reasons explained above, the Commissioner's decision is vacated and remanded for proceedings consistent with this opinion.

Dated: October 20, 2023

                                                    */s/ James E. Grimes Jr.*
                                                    James E. Grimes Jr.
                                                    U.S. Magistrate Judge